IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| VERONICA JENEAN MILLER, | CIVIL ACTION NO. 9:13-0915-DCN-BM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN,[1] COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |



The Plaintiff filed the complaint in this action, pro se, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)[2] on April 21, 2009 (protective filing date), alleging disability as of October 20, 2005

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this lawsuit.

[2]Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that she was disabled during the insured period for DIB may still receive SSI benefits if she can establish that she is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir.
(continued...)

due to a bulging disc in her back, ankle problems, arthritis and depression. (R.pp. 33, 176-186, 208). Plaintiff's claims were denied both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on August 8, 2011. (R.pp. 51-81). The ALJ thereafter denied Plaintiff's claims in a decision issued August 18, 2011. (R.pp. 33-44). The Appeals Council denied Plaintiff's request for a review of the decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 14-19).

Plaintiff then filed this action, pro se, in United States District Court. Plaintiff does not identify any specific claims of error in her Complaint, stating only that she believes the Commissioner's decision to deny her claim for disability is based on "errors of law" and is "not supported by substantial evidence of record". Unfortunately, Plaintiff also failed to file a Brief supporting her Complaint pursuant to Local Rule 83.VII.04, D.S.C.; therefore, there is no further explanation from Plaintiff in the record as to what, if any, specific claims of error are being asserted. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial

---

[2](...continued)
1999)[Discussing the difference between DIB and SSI benefits].



evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**Discussion**

A review of the record shows that Plaintiff, who was only thirty-three (33) years old when she alleges she became totally disabled,[3] has a high school education with past relevant work experience as a supervisor of a call center, leasing agent, and driver. (R.p. 42, 64-66, 69-70, 216-222, 227). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months.

After a review of the evidence and testimony in the case, the ALJ determined that,

---



[3]Cf. 20 C.F.R. § 404.1563(c)[Noting that if the claimant is a younger person; "we generally do not consider that your age will seriously affect your ability to adjust to other work."]; City of New York v. Heckler, 578 F.Supp. 1009, 1115 (D.C.N.Y. Jan. 11, 1984)["For younger individuals . . . , the presumption of ability to work is effectively conclusive."].

although Plaintiff does suffer from the "severe" impairments[4] of degenerative disc disease, lumbar spine stenosis, and obesity, she nevertheless retained the residual functional capacity (RFC) to perform a restricted range of light work,[5] and was therefore not entitled to disability benefits. (R.pp. 35, 38, 42-43). As noted, Plaintiff has failed to provide the Court with any arguments or rationale for why this decision should be reversed, and after careful review and consideration of the evidence presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commission, and that the decision should therefore be affirmed. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

## I.

First, the ALJ determined that Plaintiff's physical impairments, although severe, did not preclude the ability to perform light work with the restrictions noted.[6] Hospital records in the file

---

[4]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[5]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

[6]The ALJ did also review and assess the evidence relating to Plaintiff's mental state, but concluded that, to the extent any impairment was present, it was non severe. In making this finding, the ALJ noted that, while Plaintiff complained of depression and anxiety, she was generally found by her medical providers to have a normal mental status, and that she had not even sought mental health treatment until after she was first scheduled to appear for her disability hearing. (R.pp. 36-37, 514, 539-540, 542-548, 573, 583). The ALJ also gave substantial weight to the state agency psychological consultants' opinions that Plaintiff did not have a severe mental impairment. (R.p. 42); see (R.pp. 485-498, 589-602). See also Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]. Substantial evidence supports these findings. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular
(continued...)



4

dating back to 2006 reflect only that Plaintiff was seen on a few occasions complaining of back pain, and that she had been diagnosed with lumbar radiculopathy. See generally, (R.pp. 278-281, 283). The record also reflects that Plaintiff received epidural injections for her complaints of pain in 2005 and 2006; (R.pp. 290-293, 295-300, 336-339); and that she had gastric bypass surgery on May 15, 2006. (R.pp. 313-314). There is nothing in these records to indicate a disabling condition, however. The ALJ noted in the decision that, following her gastric bypass surgery, Plaintiff lost a significant amount of weight, although she was still morbidly obese; (R.p. 36); while an MRI of Plaintiff's lumbar spine on April 14, 2008 revealed only mild degenerative changes in the SI joints bilaterally; minimal spondylosis at the L1-2 and L2-3 levels without significant disc bulging with mild bilateral foraminal encroachment; mild to moderate disc bulging and spondylosis at the L3-4 and L4-5 levels with a small central disc protrusion at the L3-4 level; and mild diffuse disc bulging and spondylosis at the L5-S1 level. (R.p. 354).

In determining Plaintiff's RFC, the ALJ noted that Dr. Bruce Darden of the OrthoCarolina Clinic had discharged Plaintiff from his care on February 13, 2007, noting that there was nothing from a surgical standpoint that could be done for her. Although Plaintiff was complaining on that date of low back and leg pain along with problems with her right ankle due to an injury, with symptoms alleged to be an 8 on a 10 point scale, on examination Dr. Darden noted that Plaintiff was well-developed, well-nourished, oriented X 3 and alert, that she had a negative straight leg raise, had a normal lower extremity neurologically, and an appropriate mood, gait and affect. Myelogram and post myelogram CT scans showed some degenerative changes at L4-5, but

---

[6](...continued)
conclusion"]; see also Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational].



were otherwise negative, while EMG and nerve conduction velocities were also negative. (R.p. 540). Dr. Darden's Physical examinations prior to that date had also consistently noted few objective findings. See generally, (R.pp. 542-548). See Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996)[noting importance of treating physician opinions].

After her discharge in February 2007, Plaintiff did not return to see Dr. Darden again for two and one half years, when she presented on September 30, 2009, apparently on referral from another physician for pain management. Plaintiff told Dr. Darden that she had received multiple injections including trigger point injections and possible facet injections, although Dr. Darden did not have any results of these, and complained of constant, sharp, aching, and throbbing at a level of 8 on a 10 point scale together with numbness and tingling into her feet and a feeling of weakness. However, Dr. Darden noted that a work-up for a neuro compression lesion was negative; a myelogram/post myelogram CT showed degenerative changes at L4-5, but was otherwise negative; and electromyelogram/nerve conduction velocities were also negative. On examination he found Plaintiff to be in no acute distress; she was able to move easily from a sitting to a standing position and walk with a normal gait without balance disturbance; her mood and affect were normal; her weight was down to 281 pounds; she had normal range of motion with no atrophy, no gross instability and no malalignment; although she exhibited tenderness to palpation in the back in the midline and in the paraspinal musculature, she could flex forward 75% of normal with pain at the extremes of motion; and she could both heel raise and toe raise in tandem and independently. While Plaintiff complained of pain on lateral bending to the right and left, a lower extremity neurological examination showed intact sensation, intact motor strength, and symmetrical deep tendon reflexes bilaterally. Straight leg test was negative, her hips were not irritable with normal range of motion and no instability, and there was no SI instability. X-rays showed Plaintiff's hips and sacroiliac joints



were well preserved with a slight deviation of her spine to the left, and degenerative changes noted at L4-L5. Dr. Darden diagnosed Plaintiff with diffuse myofascial pain with degenerative disc disease, and referred her for physical therapy. (R.pp. 538-539).

The ALJ also noted that after Plaintiff saw Dr. Darden in February 2007, she did not see another pain specialist for over a year and one half, when she saw Dr. Henry Okonneh on July 18, 2008. Plaintiff complained to Dr. Okonneh of low back pain since 2005, although she was not exactly sure of the cause of her pain. She was currently taking Percocet, and reported she had twice been administered nerve blocks, which she found to be helpful. Plaintiff reported no weakness, no shortness of breath, she had no chest pain, and her extremities displayed no swelling or discoloration. On examination Plaintiff was noted to be significantly obese, but there was no abnormality of gait, and while her deep tendon reflexes were diminished, she had 5/5 (full) motor strength in all of her extremities. Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]. Plaintiff complained of tenderness, but her hip, knee and ankle exams were essentially within normal limits with no evidence of muscle atrophy of fasciculation. Plaintiff's mental status examination was also essentially within normal limits. Plaintiff was diagnosed with low back pain with lumbar radiculopathy and bilateral lumbar facet syndrome. Steroid injections were recommended, and Plaintiff was discharged on Tylox. (R.pp. 513-515).

Dr. Okonneh subsequently did administer some injections, and Plaintiff reported that her pain had moderately improved, although she still had some tightness in her lower back. (R.pp. 516-519). By March 13, 2009, Dr. Okonneh reported that Plaintiff complained of only "very mild pain", although she was quick to add that she had good days and bad days. Plaintiff was taking only



Percocet for pain control. (R.p. 520). On June 5, 2009, Plaintiff reported that her pain was adequately controlled with her current medications. Plaintiff displayed a moderate limp in her gait on that day, and walked with the aid of a cane. (R.p. 527). Plaintiff continued thereafter to be seen by Dr. Okonneh, and was generally treated with injections as needed. See generally, (R.pp. 528-534). It is noted that Plaintiff asked Dr. Okonneh on September 11, 2009 whether he thought she was disabled, and Dr. Okonneh advised her that she would need to undergo functional evaluation testing before they could determine whether she was disabled or not. (R.p. 533).

The ALJ further noted that after Plaintiff's visit to Dr. Okonneh in September 2009, she did not return, instead returning to see Dr. Darden at OrthoCarolina (presumably via referral) on September 30, 2009. As previously noted, Dr. Darden found little evidence of an impairment of disabling severity on this visit. (R.pp. 40, 538-539).

Plaintiff was then seen the following month by Dr. Farrukh Sair on October 28, 2009. Plaintiff complained to Dr. Sair of back pain of a severity of 8 on a 10 point scale. On examination, Dr. Sair found Plaintiff to be obese but healthy appearing, in no acute distress, and ambulating normally. Mentally, he found Plaintiff to be active and alert with a normal mood and normal affect. Plaintiff had normal movement in all of her extremities with no edema, her lumbar spine displayed a normal extension, and she had a negative straight leg raising test. Although Plaintiff complained of tenderness in the SI joints and in her paravertebral muscle, she had normal motor strength in both her upper and lower extremities, a normal gait and station, and normal reflexes bilaterally throughout. Dr. Sair noted that Plaintiff was due to start physical therapy soon, and he continued her on Oxycodone. He discussed giving Plaintiff some lumbar facet blocks instead of the epidural steroid injections she had had recently, but Plaintiff indicated she would "like to hold this off for now". (R.pp. 572-574). The ALJ noted that Plaintiff never returned to see Dr. Sair again.



Instead, Plaintiff started going to the Health Springs Medical Center, where she was seen by Dr. Chukwuma Ogugua. Plaintiff was initially seen by Dr. Ogugua on December 17, 2009, complaining of lower back and neck pain since 2006. Plaintiff reported that her prior pain doctor had recently refused to refill her narcotics because she did not want to get any more shots. A physical examination on that date was generally unremarkable, with no lumbar tenderness being noted. Dr. Ogugua refilled Plaintiff's prescription for Zanaflex, started her on Ultracet, and instructed her to return in two months. (R.pp. 583-584). The ALJ noted that Plaintiff did not mention back pain during her follow-up visits throughout 2010,[7] and seemed satisfied with how her narcotic medications relieved her pain. (R.pp. 40, 585-586, 622-623, 626-627, 631-632). It was not until December 28, 2010, when Plaintiff advised Dr. Afulukwe that she was pregnant, that her pain regimen (which now included Percocet) was discontinued. Dr. Afulukwe noted at that time that, in light of Plaintiff's pregnancy, he was not sure what medications Plaintiff could safely take. He did perform an examination, noting that while Plaintiff continued to be morbidly obese, she was in no acute distress, her gait and station were intact, she had a normal posture, and a negative Rhomberg.[8] He opined that Plaintiff had tender lumbar spinous processes. (R.pp. 634-635).

Plaintiff was referred to Dr. Sanjy Nandurkar, who saw the Plaintiff on February 3, 2011. The purpose of this referral was for an initial evaluation of Plaintiff's chronic back pain symptoms, and for a recommendation for pain management during Plaintiff's pregnancy. Dr. Nandurkar reviewed Plaintiff's medical history and noted that Plaintiff had been doing okay on the

---

[7]In addition to Dr. Ogugua, Plaintiff was also seen by Dr. Ifediora Afulukwe, another physician with Health Springs Medical Center, during this time.

[8]The Rhomberg test is a neurological test used to detect poor balance. Stedman's Medical Dictionary 373770 (27)th ed.2000).

9



pain medications she had been prescribed until she had become pregnant. Now, as a result of her pregnancy, no physician was willing to continue writing these prescriptions for her, and Plaintiff complained to Dr. Nandurkar of constant pain with variable intensity at a level of 9 out of 10. However, on examination Plaintiff was found to be well appearing and in no distress, her large joint range of motion was within functional limits without deformity, and her thoracic spine had no midline tenderness or deformity. With respect to her lower back, while Plaintiff complained of tenderness over the lower LS area, she had no tenderness over the bilateral SI joint, piriformis muscle, or greater trochanter. Plaintiff also had only minimal painful restriction of her lumbar range of motion, with extension being more painful than flexion, while her bilateral SLR, bilateral lumbar facet loading, SI joint provocation, and piriformis tests were all negative. A neurological examination revealed functional muscle strength with normal muscle tone, with sensation grossly intact and symmetrical in all dermatomes. Palpation revealed no trigger points. Plaintiff was diagnosed with a lumbar sprain and with being pregnant, and was directed to physical therapy one to two times a week, with the goal being to cut down on her need for narcotics. Lidoderm samples were provided. (R.pp. 641-643).

Plaintiff returned to see Dr. Nandurkar on April 12, 2011 with continued complaints of pain in her lower back radiating to her front thighs bilaterally at a level of 6 on a 10 point scale. However, Plaintiff reported her medications were effective without any side effects, and that her current plan of management was helping her to control her pain and improve her daily function. On examination Plaintiff's extremities appeared normal without any deformities, edema, or calf tenderness, while an examination of her major joints revealed functional range of motion with no abnormal muscle tone and no obvious wasting. Plaintiff's sensation was grossly intact and symmetrical in all dermatomes, and palpation revealed no trigger points. Plaintiff complained of tenderness over the lower lumbar midline and paraspinal area. (R.pp. 639-640).



Dr. Ogugua saw Plaintiff the following month (May 23, 2011), found Plaintiff to be in no acute distress, and opined that Plaintiff's pain management plan "appears to have her pain controlled to a tolerable level". (R.pp. 41, 652-653). See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992)[generally conservative treatment not consistent with allegations of disability].

The ALJ reviewed this medical record together with Plaintiff's subjective testimony, and determined that Plaintiff's degenerative disc disease, lumbar spine stenosis, and obesity (all of which he found were severe impairments) limited Plaintiff's RFC to light work, with the ability to only occasionally climb stairs, stoop, and crouch; no climbing of ladders; and only occasional exposure to hazards. (R.p. 38). In reaching this conclusion, the ALJ noted that Dr. Afulukwe had opined on December 13, 2010 that Plaintiff was "unable to work" due to her medical problems. (R.p. 633). Dr. Afulukwe also authored a letter on June 3, 2011, in which he opined that as a result of chronic back pain, Plaintiff's ability to sit, stand and walk were severely limited, that she could not stay in one position for up to 15 minutes at a time, that she would have to lie down from time to time to help with her pain, and that her chronic pain was further complicated by high blood pressure and obesity, making it even more difficult for Plaintiff to engage in activities that may help with her pain control. (R.p. 654). The ALJ assigned little weight to these opinions, however, noting that at the time Dr. Afulukwe issued his December 2010 letter, he had only seen the Plaintiff for a sleep study and one office visit the previous July, and that even with respect to his second opinion in June 2011, the absence of any objective observations by either Dr. Afulukwe or his partner, Dr. Ogugua, in their treatment notes failed to lend credibility to this opinion. (R.p. 41). Cf. Burch v. Apfel, 9 Fed.Appx. 255 (4th Cir. 2001) [ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes.].

The ALJ noted that Dr. Ogugua's findings documented no abnormalities on



11

musculoskeletal examination, nor did Dr. Afulukwe's own treatment notes do so until December 2010, when he opined that Plaintiff had a tender lumbar spinous process. (R.pp. 40-41). Dr. Darden and Dr. Okonneh had also noted few abnormal findings during their physical examinations of the Plaintiff, while Plaintiff had been treated only conservatively for her complaints. (R.pp. 39-41). See Richardson v Perales, 402, U.S. 389, 408 (1971)[assessment of examining physicians may constitute substantial evidence in support of a finding of non-disability]; Robinson, 956 F.2d at 840 [generally conservative treatment not consistent with allegations of disability];see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)["When a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted)].

Although the ALJ did find that Plaintiff suffered from degenerative disc disease, lumbar spine stenosis, and obesity, in light of the overall evidence of record he only found Dr. Afulukwe's June 2011 opinion credible to the extent Plaintiff was limited to performing light work activity, but otherwise gave it little weight. (R.p. 41); see Craig, 76 F.3d at 589-590 [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; see also Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]; 20 C.F.R. § 404.1527(e) ["a statement that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"]. The undersigned can discern no reversible error in the ALJ's findings and conclusions. Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989)["The mere fact that working may cause pain or discomfort does not mandate a finding of disability].



Indeed, the decision reflects that the ALJ gave Plaintiff every benefit of the doubt by reducing her RFC to light work with the limitations set forth in the decision, as the record contains medical opinions that Plaintiff could perform at a higher RFC. Plaintiff's medical records had been reviewed by state agency physicians on July 24, 2009 and June 23, 2010, and these physicians both separately concluded that Plaintiff had the RFC for medium work[9] with postural limitations greater than those assigned by the ALJ in his decision. (R.pp. 477-484, 603-610). See Smith, 795 F.2d at 345 [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]. However, while the ALJ generally agreed with the functional limitations imposed by the two state agency physicians, on his review of the entire record he assigned Plaintiff a more limited RFC of light work, rather than medium work. (R.pp. 41-42). Cf. Marquez v. Astrue, No. 08-206, 2009 WL 3063106 at * 4 (C.D.Cal. Sept. 21, 2006)[No error where ALJ's RFC finding was even more restrictive than the exertional levels suggested by the State Agency examiner].

In reaching this conclusion, the ALJ also specifically considered the effects Plaintiff's obesity could have on her RFC, noting that even though no treating or examining medical source had specifically attributed additional or cumulative limitations on account of Plaintiff's obesity, her obesity could nevertheless limit Plaintiff's ability to perform strenuous activities, such as heavy lifting, which the ALJ stated he had addressed in the RFC by limiting Plaintiff to lifting and carrying only 20 pounds occasionally, 10 pounds frequently, with the additional postural limitations noted. (R.pp. 38, 41). Again, the undersigned can discern no reversible error in the ALJ's findings and conclusions. Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) ["What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the

---

[9]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).



important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; see also Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"].

## II.

Having determined Plaintiff's RFC, the ALJ obtained Vocational Expert testimony at the hearing to determine whether Plaintiff could perform her past relevant work with the limitations noted. The Vocational Expert not only testified that Plaintiff could perform her past relevant work with these limitations, but identified several other occupations that Plaintiff could perform with these limitations. (R.pp. 77-79). See SSR-00-4p, at * 4 [ALJ may rely on VE's professional experience]; Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980)[ALJ may rely on VE opinion based on training, experience and familiarity with skills necessary to function in various jobs]. The ALJ accepted this testimony; (R.pp. 42-43); and again the undersigned can discern no reversible error in the ALJ's conclusion or in his treatment of this evidence.

The ALJ's hypothetical to the VE accounted for all credibly established medical findings in the record and as determined by the ALJ's RFC finding, and his reliance on this testimony is therefore not grounds for reversal of the decision. Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991)[ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record]; Plummer v. Astrue, No. 11-6, 2011 WL 7938431, at * 5 (W.D.N.C. Sept. 26, 2011)[It is the clamant who bears the burden of providing evidence establishing the degree to which his impairment limits his RFC], adopted by 2012 WL 1858844 (May 22, 2012), aff'd. 47 Fed. Appx. 795 (4th Cir. 2012).

## Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept



as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period.  Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 22, 2014
Charleston, South Carolina



15

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

